UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——————

BRODY CAMPBELL,

     Plaintiff,                           Case No.

vs.                                      Hon.

FIFTH THIRD BANK,

     Defendant.

_____/

James C. Baker (P62668)
STERLING ATTORNEYS AT LAW, P.C.
Attorney for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, Michigan 48304
(248) 644-1500
jbaker@sterlingattorneys.com

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Brody Campbell, by his attorney James C. Baker of Sterling Attorneys at Law, P.C., for his Complaint and Demand for Jury Trial, submits:

***Jurisdiction and Parties***

1. This action is for employment discrimination, specifically sex discrimination, hostile work environment sexual harassment, disability discrimination, retaliation, and interference in violations of Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.*; Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*; the Americans with Disabilities Act of 1990, 42 USC

§12111 *et seq.*; Michigan's  Persons with Disabilities Civil Rights Act, MCL §37.1101 *et seq.*; and The Family Medical Leave Act of 1993 ("FMLA"), 29 USC 2601 *et seq.*, all arising out of Plaintiff's employment with Defendant.

2.     Plaintiff Brody Campbell (hereinafter "Plaintiff," "Brody," "Mr. Campbell," or "Plaintiff Campbell") is an individual who resides in Lapeer, Michigan, within the Eastern District of Michigan.

3.     Defendant Fifth Third Bank is a foreign banking corporation with headquarters in Cincinnati Ohio, which does substantial business in Michigan, including maintaining principal banks and other places of business in the Eastern District of Michigan.

4.     The events giving rise to this cause of action occurred within the Eastern District of Michigan.

5.     This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1331 (federal question), 28 USC 1343 (civil rights) and 28 USC 1367 (supplemental jurisdiction).

6.     Plaintiff timely files this Complaint within 90 days of receiving his EEOC right to sue notice; the right to sue was issued on January 8, 2026.

7.     Plaintiff's last day of employment with Fifth Third Bank was March19, 2025.

## BACKGROUND FACTS

8.     Plaintiff is a man.

9. Plaintiff began working for Fifth Third in June 2023.

10. His performance exceeded Defendant's expectations, earning him a promotion to Personal Banker II and a transfer in March 2024.

11. Between April 2024 and March 19, 2025, Plaintiff experienced a severe and pervasive discriminatory and sexually hostile work environment predominantly at the hands of his female Branch Manager, Kimberly Mangrum.

12. The experiences Mr. Campbell suffered were so severe, Ms. Mangrum's conduct so egregious that she created an intolerable working environment.

13. Plaintiff felt so unsafe that he had no other choice but to end his employment with Fifth Third Bank by notice given on March 4, 2025.

14. Despite the harassment Plaintiff was still enough of a professional that he served his branch's customers for the two weeks of his notice period, despite his manager's continued disparagements.

15. Brody Campbell resigned his employment with Fifth Third, but that decision was not arrived at lightly.

16. Ms. Mangrum verbally abused Mr. Campbell and directed condescension his way almost daily.

17. She called him a "loser" and "ugly," telling him she hated him, all in the presence of customers and co-workers.

18. The Branch Manager would say to co-workers about Plaintiff, "I just hate his face."

19. When Plaintiff opposed her disparagement, Kimberly Mangrum would say things like "I thought you could take it because you're a man," or "Fifth Third is never going to fire me, they've tried before."

20. Plaintiff's sex was a motivating factor in the harassment, whereas the comments support the Bank's knowledge of Ms. Mangrum's conduct as its Branch Manager, for which Defendant is liable.

21. Despite the regular harassment, Plaintiff continued to do his job and do it well.

22. Plaintiff performed his job such that Ms. Mangrum forced him to do extra work, to train new employees (which was her job), to conduct extra account maintenance for customers, and to take her scheduled appointments.

23. Brody Campbell was the only man who worked under Kimberly Mangrum; she did not treat women in her branch with such disgust and disdain.

24. The near-daily harassment was witnessed by Fifth Third's staff and others alike.

25. In September 2024, Plaintiff's wife and nine-month-old child visited him at the branch.

26. Upon arriving, Ms. Mangrum derisively asked, "are you even sure that's his kid? It would be better for you if it wasn't."

4

27.	Others witnessed the abuse, including three Personal Bankers I.

28.	Plaintiff was so impacted by Ms. Mangrum's conduct that he was diagnosed medically, and he took leave under The Family and Medical Leave Act (FMLA).

29.	Defendant's Retail Regional Manager was aware of Ms. Mangrum's conduct.

30.	That Manager rhetorically asked Plaintiff if his leave was because of his experiences at the branch.

31.	Fifth Third by its Retail Regional Manager interfered with Plaintiff's FMLA leave by claiming he didn't notify Ms. Mangrum of his leave properly.

32.	Mr. Campbell told Fifth Third that he had emailed his manager on October 18, 2024 that his FMLA would commence on October 21.

33.	Plaintiff also reported his return to work would be when his doctor deemed him fit to return.

34.	Ms. Mangrum also interfered with Plaintiff's FMLA.

35.	She complained to his co-workers about his leave, that it inconvenienced her by having to increase her workload.

36.	However, her workload was not increased because when Plaintiff returned from FMLA leave, the Branch Manager gave Plaintiff her work that she had piled up while he was gone.

37. The harassment didn't abate when he returned to work.

38. Ms. Mangrum made negative comments within earshot yet would then try to diminish her conduct by saying things like, "I'm just joking Brody, no need to get all upset."

39. When he confronted her, she again told him Fifth Third would never fire her; they had tried before and failed.

40. This further supports the Bank was on notice of Kimberly Mangrum's conduct.

41. This also supports the fear Plaintiff felt that he would be retaliated against if he reported her.

42. Plaintiff was left with no choice but to end his employment.

43. To stay would be to continue to suffer detriments to his physical and mental health.

44. Even when he gave his notice, Ms. Mangrum continued her harassing ways.

45. She admitted to sabotaging his job searches by giving false negative feedback to prospective employers when they called to verify his employment.

46. Despite applying to over 100 external jobs, and 8 internal Fifth Third positions, Plaintiff received zero interviews.

47. Ms. Mangrum not only interfered with Mr. Campbell's prospects, she defamed Brody to his detriment.

48.     Plaintiff informed Fifth Third of the harassment.

49.     Brody Campbell filed a formal complaint against Ms. Mangrum.

50.     He requested HR review recorded phone calls and security camera footage.

51.     HR denied his request.

52.     Because he feared retaliation, Plaintiff told Human Resources he was considering seeking legal counsel about the hostile work environment.

53.     Defendant's HR directed him to speak with Fifth Third's Employee Relations Consultant who was verbally aggressive with Plaintiff, yelling at him, demanding to know why he didn't report Ms. Mangrum sooner.

54.     Plaintiff responded that she had been reported, but Fifth Third did nothing to remedy her behavior.

55.     He told Fifth Third how the Branch Manager bragged about how the Bank couldn't do anything to her.

56.     Brody Campbell told both HR and Employee Relations how he feared her retaliation.

57.     Rather than try to understand the cause of Plaintiff's employment decision, Fifth Third engaged in the retaliatory conduct he feared.

58.     The Bank blamed Mr. Campbell for conduct it knew was happening.

7

59. Defendant didn't investigate Ms. Mangrum when Plaintiff went on leave in October 2024.

60. Fifth Third didn't suspend or remove Ms. Mangrum from the branch immediately upon Plaintiff making his formal complaint.

61. On information and belief, on or about Friday, March 21, 2025, a week after Plaintiff's last day, Fifth Third Bank terminated Kimberly Mangrum's employment.

62. The Bank didn't offer Brody Campbell his career back.

63. Fifth Third didn't, in any way, attempt to assuage the harm caused at the hands of Kimberly Mangrum; conduct Fifth Third was aware of, was responsible for, yet did nothing to remedy.

64. Given the above-described course of events, Mr. Campbell has legitimate claims of hostile work environment sexual harassment against Kimberly Mangrum, a Branch Manager for whom Fifth Third Bank is responsible.

65. Plaintiff communicated his experiences to the Bank, only to be practically told, "don't let the door hit you on the way out."

66. Fifth Third refused to act on harassment it knew was happening.

67. The Bank didn't investigate the reasons why Brody took FMLA/short term disability leave.

68. Fifth Third refused to suspend Kimberly Mangrum when Plaintiff filed a formal complaint against her.

69. On information and belief, it wasn't until HR spoke to the women in Plaintiff's branch, and they were believed, that Fifth Third Bank took any remedial action against Ms. Mangrum.

70. That supports the Bank was motivated by sex in its employment and investigatory practices.

71. Plaintiff's adverse employment action rises to the level of a constructive discharge.

72. "Constructive discharge" deems Plaintiff's resignation to be involuntary because the employer created and/or allowed a hostile or intolerable work environment to exist or has engaged in other conduct which forced Plaintiff to quit or resign.

73. Fifth Third's Branch Manager, for whom Fifth Third is responsible, engaged in such pervasive and severe harassment against her only male subordinate, that he was forced to go on medical leave.

74. When he returned, the conduct continued unabated until he was forced to resign due to an extremely unsafe working environment.

75. Before he started working under the Branch Manager, Brody Campbell excelled and was promoted.

76. After, he was forced to leave a successful job and thereafter had his internal and external employment prospects sabotaged by the very same manager who forced him out.

77. Mr. Campbell reported why Ms. Mangrum's conduct made him no longer feel safe continuing his employment and Fifth Third did nothing to remedy the environment until after he left.

78. Defendant's actions during his employment and since have resulted in serious financial and emotional hardship to Plaintiff.

79. Defendant, by its agent and employee, engaged in unfair and discriminatory and retaliatory treatment against Plaintiff, created and maintained a severe and pervasive sexually hostile work environment, all culminating in Plaintiff's unjustified constructive discharge and adversely impacting his employment opportunities.

## COUNT I

### DISCRIMINATION AND
### SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

80. Plaintiff incorporates the preceding paragraphs by reference.

81. At all material times, Plaintiff was an employee and Defendant Fifth Third Bank was his employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC 2000-e *et seq.*

82. Title VII prohibits sex discrimination, including sexual harassment.

83. Defendant by its agent and Branch Manager subjected Plaintiff to unwanted, discriminatory, and hostile comments and conduct, which were severe and pervasive, and which constituted a sexually hostile work environment.

84. The conduct at issue was intentional and willful, and engaged in with malice or with reckless disregard to the rights and sensibilities of Plaintiff.

85. With knowledge of the severity and pervasiveness of the harassment, Defendant failed to take prompt remedial action to end the harassment.

86. As a direct and proximate result of those actions, the terms, conditions, and benefits of Plaintiff's employment were adversely affected.

87. As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT II

### RETALIATION IN VIOLATION OF TITLE VII

88. Plaintiff incorporates the preceding paragraphs by reference.

11

89. Title VII prohibits retaliation against persons who complain about sex discrimination, including sexual harassment.

90. Plaintiff engaged in Title VII protected activity when he complained of and opposed unlawful discrimination, harassment, and retaliation.

91. Defendant retaliated against Plaintiff as set forth herein, which violated the anti-retaliation provisions of Title VII.

92. The actions of Defendant by its agents were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

93. As a direct and proximate result of the Defendant's wrongful and retaliatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and other benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT III

### DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILIITIES ACT OF 1990

94. Plaintiff incorporates the preceding paragraphs by reference.

12

95. At all material times, Plaintiff was an employee and Defendant was his employer, covered by and within the meaning of the Americans with Disabilities Act (ADA) of 1990, 42 USC 12111 et seq.

96. Plaintiff is a person with a disability as defined by the ADA.

97. Defendant, by its agents and employees, discriminated against, harassed, and refused to accommodate Plaintiff's disability.

98. Defendant failed in good faith to participate in an interactive process regarding Plaintiff's request for accommodation.

99. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

100. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected and he was constructively discharged.

101. As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, he has suffered injuries and damages, including, but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and other benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful employment.

13

## COUNT IV

## SEX DISCRIMINATION AND SEXUAL HARASSMENT IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

102.   Plaintiff incorporates the preceding paragraphs by reference.

103.   At all material times, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA) MCL 37.2101, *et seq.*

104.   Michigan's ELCRA prohibits sex discrimination, which includes sexual harassment.

105.   Defendant by its agent and Branch Manager subjected Plaintiff to unwanted and harassing comments and conduct, which was severe and pervasive, and which constituted a sexually hostile work environment.

106.   The conduct at issue was intentional and willful, and engaged in with malice or with reckless disregard to the rights and sensibilities of Plaintiff.

107.   With knowledge of the severity and pervasiveness of the harassment, Defendant failed to take prompt remedial action to end the harassment.

108.   As a direct and proximate result of those actions, the terms, conditions, and benefits of Plaintiff's employment were adversely affected.

109.   As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages,

14

including but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT V

### RETALIATION IN VIOLATION OF
### THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

110.   Plaintiff incorporates the preceding paragraphs by reference.

111.   The Elliott-Larsen Civil Rights Act prohibits retaliation against persons who complain about sex discrimination, including sexual harassment.

112.   Plaintiff engaged in protected activity when he complained of and opposed unlawful discrimination, harassment, and retaliation.

113.   Defendant retaliated against Plaintiff as set forth herein, which violated the anti-retaliation provisions of ELCRA.

114.   The actions of Defendant by its agent and Branch Manager were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

115.   As a direct and proximate result of the Defendant's wrongful and retaliatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and other benefits; mental and

15

emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

**COUNT VI**

**DISCRIMINATION IN VIOLATION OF THE
MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**

116.   Plaintiff incorporates the preceding paragraphs by reference.

117.   At relevant times, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of Michigan's Persons with Disabilities Civil Rights Act (MPWDCRA). MCL 37.1101 *et seq.*

118.   Michigan's PWDCRA prohibits discrimination on the basis of a disability.

119.   Plaintiff informed, and Defendant was aware of his diagnosed disability associated with the hostile work environment in which he was forced to work.

120.   Defendant, by its agent, treated Plaintiff differently, discriminated against him, subjected him to unreasonable conditions of employment, failed or refused to engage in an interactive process, and allowed the conduct to continue unabated such that Plaintiff was constructively discharged from his employment due to his disability.

121. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless disregard to the rights and sensibilities of Plaintiff.

122. As a direct and proximate result of those actions, the terms, conditions and benefits of Plaintiff's employment were adversely affected.

123. As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety, humiliation, and embarrassment; loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment.

## COUNT VII

### VIOLATION/INTERFERENCE WITH
### THE FAMILY AND MEDICAL LEAVE ACT

124. Plaintiff incorporates the preceding paragraphs by reference.

125. Plaintiff was an "eligible employee" as defined in the FMLA, 29 USC 2611(2), in that Plaintiff worked for Defendants for over 12 months, he performed at least 1,250 hours of work for Defendant in the 12 months preceding his opportunity for FMLA leave, and Defendant is a qualified employer.

126. At times relevant to the issues in the lawsuit, Plaintiff was protected by the FMLA.

127. At relevant times, Defendant knew Plaintiff was eligible to exercise his rights under the FMLA.

128. Defendant willfully violated the FMLA by interfering with Plaintiff taking FMLA, by making backhanded comments about FMLA, by telling Plaintiff incorrectly that he did not invoke his FMLA protections properly, and by having his Branch Manager pile up her work while Plaintiff was on leave, only to have him do her work upon his return from leave.

129. For the reasons stated Plaintiff was discouraged from exercising rights under the Family and Medical Leave Act by Defendant

130. Defendant's adverse conduct relative to Plaintiff's leave and thereafter, combined with the other conduct described herein, denied Plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the FMLA.

131. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries and is entitled to compensation for any lost wages, his lost tangible and intangible benefits of employment, his emotional distress and mental anguish from losing a career, and other incidental, liquated, consequential, and exemplary damages, including attorney fees and interest as an element of damages, statutory attorney fees, and costs.

## RELIEF REQUESTED

Wherefore, for the foregoing reasons, Plaintiff Brody Campbell seeks judgment against Defendant Fifth Third Bank as follows:

1. Compensatory damages in an amount he is found to be entitled;

2. Exemplary damages in an amount he is found to be entitled;

3. Punitive damages in an amount he is found to be entitled;

4. Liquidated damages in an amount he is found to be entitled;

5. Lost wages and benefits in an amount he is found to be entitled;

6. Interest, costs, and statutory attorney fees as damages; and

7. Whatever other legal relief appears appropriate and just.

## JURY DEMAND

Plaintiff Brody Campbell requests a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/ James C. Baker
James C. Baker (P62668)
Attorney for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
jbaker@sterlingattorneys.com

Dated: March 27, 2026